**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re | § | |
| | § | **No. 23-34374** |
| **COUNTY INVESTMENT, LP, et al,**[1] | § | **Chapter 11** |
| | § | **Jointly Administered** |
| *Debtors.* | § | |

---

**AMENDED PLAN OF REORGANIZATION**
**FOR SMALL BUSINESS UNDER CHAPTER 11**
Dated February 16, 2024

---

THIS PLAN OF REORGANIZATION IS SUBMITTED TO ALL CREDITORS AND INTEREST HOLDERS OF THE DEBTOR, COUNTY INVESTMENT, LP (CASE NO. 23-34374),[1] ENTITLED TO VOTE ON THE CHAPTER 11 PLAN OF REORGANIZATION SUBMITTED BY THE DEBTORS PURSUANT TO THE SMALL BUSINESS REORGANIZATION ACT, CODIFIED IN SUBCHAPTER V OF CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE. 11 U.S.C. §§ 1181–1195. THIS PLAN OF REORGANIZATION CONTAINS INFORMATION THAT MAY AFFECT YOUR DECISION TO VOTE TO ACCEPT OR REJECT THE PLAN. ALL CREDITORS AND INTEREST HOLDERS ARE URGED TO READ THE ENTIRE PLAN CAREFULLY.

A CONFIRMATION HEARING FOR THIS PLAN OF REORGANIZATION WILL BE HELD IN COURTROOM 403 AT THE UNITED STATES COURTHOUSE, 515 RUSK, 4TH FLOOR, HOUSTON, TX 77002 ON TUESDAY, FEBRUARY 20, 2024 AT 11:30 A.M.[2]

CREDITORS AND INTEREST HOLDERS ENTITLED TO VOTE ON THE PLAN ARE URGED TO VOTE IN FAVOR OF THIS PLAN OF REORGANIZATION AND TO RETURN THE COMPLETED BALLOT(S) TO PENDERGRAFT & SIMON, LLP, 2777 ALLEN PARKWAY, SUITE 800,

---

[1] The Debtors in these Chapter 11 cases, along with the last 4 digits of their respective Employer Identification Numbers, are: (a) County Investment L.P. (No. 23-34374, EIN x4828) and (b) 2017 Partners, LLC (No. 23-34375, EIN x2699).

[1] This Plan does not attempt to reorganize the business of 2017 Partners, LLC (Case no. 23-34375). For further explanation, see note 4, on page 7.

[2] To participate electronically, please see instructions posted on Judge Jeffrey P. Norman's web page at https://www.txs.uscourts.gov/page/united-states-bankruptcy-judge-jeffrey-p-norman.

HOUSTON, TX 77019 NOT LATER THAN WEDNESDAY, FEBRUARY 14, 2024. VOTES WILL BE TABULATED WITH RESPECT TO THE DEBTORS' PLAN AND CLAIMS WILL BE CLASSIFIED AND DISTRIBUTIONS IN ACCORDANCE WITH THE PLAN.

TO THE EXTENT THE DEBTOR DOS NOT RECEIVE SUFFICIENT VOTES FOR CONFIRMATION OF A CONSENSUAL PLAN, DEBTOR INTENDS TO INVOKE THE CRAMDOWN PROVISIONS OF SECTION 1129(b) OF THE BANKRUPTCY CODE IN ORDER TO OBTAIN CONFIRMATION OF THE PLAN. ALTERNATIVELY, THIS PLAN MAY BE WITHDRAWN AND A NEW PLAN SUBMITTED.

THIS PLAN INCORPORATES BY REFERENCE CERTAIN DOCUMENTS RELATING TO THE DEBTOR THAT ARE NOT PRESENTED HEREIN OR DELIVERED WITH THIS PLAN, INCLUDING, BUT NOT LIMITED TO, THE DEBTOR'S SCHEDULES, THE DEBTOR'S STATEMENT OF FINANCIAL AFFAIRS, AND THE DEBTOR'S MONTHLY OPERATING REPORTS. THESE AND ALL OTHER DOCUMENTS AND PLEADINGS FILED WITH THE COURT PERTAINING TO THIS CASE ARE AVAILABLE FROM THE CLERK OF THE COURT (515 RUSK, 5TH FLOOR, HOUSTON, TX 77002, TEL. 713-250-5500). ELECTRONIC ACCESS TO THESE DOCUMENTS AND PLEADINGS IS AVAILABLE AT http://ecf.txsb.uscourts.gov. A PACER LOGIN WILL BE NECESSARY TO VIEW THE DOCUMENTS. IF YOU DO NOT HAVE A PACER LOGIN, YOU MAY REGISTER ONLINE AT http://pacer.psc.uscourts.gov.

## Table of Contents

I. Background for Case Filed Under Subchapter V ................................................................. 5

   A.  Description and History of the Debtor's Businesses ..................................................... 5

      1.  The 2021 Chapter 11 Bankruptcy ........................................................................... 5

      2.  The Current Chapter 11 Bankruptcy ....................................................................... 6

   B.  Liquidation Analysis ..................................................................................................... 8

   C.  Ability to make future plan payments and operate without further reorganization .......... 8

II. Summary ............................................................................................................................. 8

III. Classification of Claims and Interests ............................................................................... 9

IV. Treatment of Administrative Expense Claims, Priority Claims, and Quarterly and
    Court Fees ....................................................................................................................... 10

   A.  Unclassified claims ..................................................................................................... 10

   B.  Administrative expense claims .................................................................................... 10

   C.  Priority tax claims ....................................................................................................... 10

   D.  Statutory fees .............................................................................................................. 12

   E.  Prospective quarterly fees .......................................................................................... 12

V. Treatment of Claims and Interests Under the Plan ............................................................ 12

VI. Allowance and Disallowance of Claims ............................................................................ 16

   A.  Disputed claim ............................................................................................................ 16

   B.  Objections to claims ................................................................................................... 16

   C.  Delay of distributions on a disputed claim ................................................................. 16

   D.  Anticipated claims objections ..................................................................................... 16

   E.  Settlement of disputed claims ..................................................................................... 16

VII. Provisions for Executory Contracts and Unexpired Leases .............................................. 16

   A.  Assumed executory contracts and unexpired leases ................................................... 16

   B.  Rejected executory contracts and unexpired leases .................................................... 17

VIII. Means for Implementation of the Plan ........................................................................... 17

   A.  Sale of Real Property .................................................................................................. 17

   B.  Execution of All Plan Documents ................................................................................ 18

   C.  Plan Payments ............................................................................................................ 18

      1.  Payments by Debtor under a consensual Plan ........................................................ 18

2.   Payments by the CRO under a non-consensual Plan .................................. 18
D.   Retained claims .................................................................................................. 18
E.   Periodic Reporting ............................................................................................. 19
F.   Remedies in the Event of a Default .................................................................. 19

IX. Effect of Confirmation ................................................................................................ 19

X. Discharge ....................................................................................................................... 19

XI. Other Provisions .......................................................................................................... 20
A.   Injunctions related to Debtor ........................................................................... 20
B.   Injunctions related to Debtor's partners ......................................................... 21
C.   Exculpation and Limitation of Liability ......................................................... 21
D.   Vesting of Assets ................................................................................................ 22
E.   Employment of professionals after the Effective Date .................................. 22
F.   Final Decree ....................................................................................................... 22
G.   Reservations of right to amend Plan ............................................................... 22
H.   Alternative plans of reorganization ................................................................. 22
I.   Definitions and rules of construction .............................................................. 23
J.   Effective Date ..................................................................................................... 25
K.   Severability ........................................................................................................ 25
L.   Binding effect ..................................................................................................... 25
M.   Headings ............................................................................................................. 25
N.   Controlling effect ............................................................................................... 26
O.   Retention of jurisdiction .................................................................................. 26

# I.
# Background for Case Filed Under Subchapter V

## A.   Description and History of the Debtor's Businesses

COUNTY INVESTMENT, L.P. ("CILP") is a limited partnership formed and organized under the laws of the State of Texas. The Debtor was formed on November 28, 2005. The Debtor is managed by its General Partner, U.S. Capital Investments LLC. At all material times, the Debtor has been classified as a *disregarded entity* for federal income tax purposes. *See* 26 C.F.R. § 301.7701-3. Therefore, its income taxes are reported on the personal tax returns of its partners.[3] Moreover, as a flow-through entity, the Debtor is not directly responsible for payment of income taxes; rather, all taxes are the personal liability of Debtors' partners.

## 1.   The 2021 Chapter 11 Bankruptcy

On September 3, 2021, County Investment filed a Chapter 11, Subchapter V, proceeding in this District and Division which was jointly administered with two other Chapter 11, Subchapter V, proceedings. The prior cases were: (a) *In re Massood Danesh Pajooh*, no. 21-32932, (b) *In re County Investment L.P.*, no. 21-23933; and (c) *In re U.S. Capital Investments LLC*, no. 21-32936. The prior cases were jointly administered under the *Pajooh* case, no. 21-32932 (collectively, the "Prior Bankruptcy Cases"). Brendon Singh was appointed as the Subchapter V Trustee, and Michael P. Jason was appointed as a Chief Restructuring Officer ("CRO").

Over the Course of 24 months, CILP and the other Debtors accomplished the following:

a. **Negotiation of Cash Collateral Orders**. Debtors successfully negotiated three interim cash collateral orders and a final cash collateral order with Debtors' largest secured creditor, Community Bank of Texas ("CBT").

b. **Retention of Chief Restructuring Officer**. Debtors retained the services of Michael P. Jayson, CPA to act as the CRO, and the retention of Mr. Jayson was approved by the Court.

c. **Mediated the Disputes with the Receiver**. Debtors spent five days mediating very contentious disputes with W. Marc Schwartz, a state court receiver (the "Receiver") for Debtors before Bankruptcy Judge, Eduardo V. Rodriguez. Ultimately, a Mediated Settlement Agreement was executed and a Rule 9019 Motion was filed with the Court. On January 25, 2022 the Court entered an Order Granting Debtors' Motion to Approve Compromise of Controversies with W. Marc Schwartz, Receiver.

d. **Negotiated Exit Financing Loan**. Debtors successfully negotiated an Exit Financing Loan with Stronghill Texas, LLC, in the amount of $1,200,000.00. On January 26, 2022, the Court entered Amended Order Granting Expedited

---

[3] See page 14 for a listing of the partners.

Motion for Authority to Enter into Exit Loan Financing. The loan closed on February 11, 2022, and funded on February 15, 2022.

e. **Negotiated and Confirmed Plan of Reorganization**. Debtors negotiated extensively with 11 Classes of secured and unsecured Creditors along with two taxing entities, the IRS and Texas ad valorem taxing entities. The Restated Third Amended Plan of Reorganization Subchapter V of Chapter 11 (the "Confirmed Plan") was confirmed by Order Confirming Consensual Plan of Reorganization for Small Business under Chapter 11, Subchapter V (the "Confirmation Order") on January 27, 2022.

f. **Sale of Duplex Tract.** On March 22, 2022, Debtor CILP filed a Motion for authority to Sell Real Property Free and Clear Of Liens, Claims and Encumbrances Pursuant to 11 U.S.C. § 363(f). ECF Doc 227. On May 19, 2022, the Court entered Order Granting Debtor's Motion to Authorize Sale of Real Property Free and Clear of Liens, Claims and Encumbrances Pursuant to 11 U.S.C. § 363(f). ECF Doc 262. On September 15, 2022, the sale of the Duplex Tract closed.

As a result of the Exit Financing and the sale of the Duplex Tract, all claims of creditors under the Confirmed Plan were either paid or restructured with the exception of $35,000 owed to the IRS.

In September 2023, Texas Capital Loans, LLC ("TCL"), successor to Community Bank of Texas, N.A., sent four demand letters indicating that approximately $133,995.19 was past due and owed from March of 2023 to September 2023.

After attempting to consult with the Chief Restructuring Officer ("CRO"), Michael P. Jayson, it was discovered that Mr. Jayson had been hospitalized with a serious kidney malfunction. Mr. Jayson remained in the hospital's ICU area for the entire month of September. Ultimately, Mr. Jayson was released from the hospital in October 2023, but he subsequently passed away during the first week of November 2023.

On September 25, 2023, the Prior Debtors filed a Motion to replace Michael P. Jayson as the CRO. His replacement was Brendon Singh. Mr. Singh's appointment as the replacement CRO was approved by the Court on September 26, 2023. ECF Doc 287. Mr. Singh took control of the DIP Account.

Meanwhile, TCL posted three properties for foreclosure to occur on the first Tuesday in November, November 7, 2023. On November 6, 2023: (a) the Huffmeister Shopping Plaza owned by County Investment; (b) an undeveloped tract of land referred to as 100 Northpoint owned by County Investment; and (c) an undeveloped tract of land referred to as the Northborough Property owned by 2017 Partners, LLC, a majority owned subsidiary of County Investment.

**2. The Current Chapter 11 Bankruptcy**

On November 6, 2023, County Investment, LP and its majority owned subsidiary, 2017 Partners, LLC each filed voluntary petitions Chapter 11 of the Code. Since that date, the Debtors have been operating as debtors-in-possession. By Order of November 8, 2023, the cases are being jointly

administered under Case No 23-34374 (ECF no. 9). On November 7, 2023, the Debtors filed a Motion for Authority to Appoint Brandon Singh as the Chief Restructuring Officer. The motion was granted on December 13, 2023 (ECF no. 56).

On the same day, Debtors filed a Motion for Authority to Appoint Tranzon as Auctioneer for the purpose of selling the following real property:

    a.  Huffmeister Plaza Shopping Center at 10807 Huffmeister Road, Houston, TX 77065 (owned by County Investment LP);

    b.  Undeveloped property at 100 Northpoint, Houston, TX 77060 (owned by County Investment LP);

    c.  Undeveloped property at 0 Northpoint, Houston, TX 77060 Property (HCAD acct. 1083840000005) (owned by County Investment LP);

    d.  Rankin Road Property, consisting of three tracts with street frontage on Ella Blvd. and Northborough Drive (owned by 2017 Partners, LLC); and

    e.  Rella Property at 0 Ella Blvd., Houston, TX 77067 (owned by Rella Development, LLC, a limited liability company in which Debtor owns 65%)

The motion was granted on December 13, 2023 (ECF no. 58).

On December 10, 2023, Debtor filed an Expedited Motion to Sell the Huffmeister Shopping Plaza. On December 13, 2023, the Court approved the motion (ECF no. 57). On December 29, 2023, the Huffmeister Shopping Plaza closing occurred at which point the secured claims of Texas Capital Loans, LLC and ad valorem taxing authorities with tax liens on the property were paid in full. Texas Capital Loans is no longer a creditor of the Debtors and has released all four of its mortgages against the Huffmeister Shopping Plaza, the undeveloped tract of land referred to as 100 Northpoint and the Northborough undeveloped tract owned by 2017 Partners, LLC.[4]

The auction of 100 Northpoint, 0 Northpoint, the 2017 Partners Northborough Tracts, and the Rella Property occurred on January 25, 2024, and a motion to approve the sale of the said property was filed on January 29, 2024 (ECF no. 93). A hearing on this Motion was held February 7, 2024 (ECF no. 95). By the time of the hearing, no party in interest filed a written objection to the Motion, at the hearing, the Court asked those people in attendance, including Danesh Massood Pajooh, whether anyone had an objection to the sale (ECF 117, containing an audio recording of the hearing). The Motion was approved by the Court (ECF no. 114).[5]

---

[4] The only asset of 2017 Partners, LLC (case no. 23-34375) will be auctioned January 25, 2024. At the post-auction closing, all amounts due to ad valorem taxing authorities will be paid in full. The only other creditor, Texas Capital Loans, was paid in full on December 29, 2023. Accordingly, as part of the Confirmation Order, it is anticipated that the 2017 Partners bankruptcy case will be dismissed.

[5] The Rella Property was not included in the final order and is retained by the Estate.

### B.   Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to the Plan as **Exhibit A**.

In a hypothetical liquidation, Debtor estimates that holders of general unsecured claims would ultimately receive 100% of their allowed claims. Moreover, certain holders of secured claims would have part of their claims treated as unsecured claims.

The Debtor does not believe that liquidation under Chapter 7 would be in the best interest of the creditors and the conversion of the case to a case under Chapter 7 could result in further delays in creditors being paid.

### C.   Ability to make future plan payments and operate without further reorganization

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the debtor's business. The Debtors' projection of revenues for the post-Effective Date Net Rental Income and Plan Payments/expenses is set forth on **Exhibit B**. Nonetheless, given that the Fondren Plaza building is not currently fully occupied, this property can produce $8,075.00 each month before setting aside any funds for payment of property taxes or insurance.

Once the auction of real property occurs on January 25, 2024, income after the Effective Date is not expected to be necessary to effectuate a confirmed Plan. **Exhibit C** shows a projection of how the cash proceeds can be used at the Effective Date to pay these allowed claims and interests.

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**

## II.
## Summary

This Plan of Reorganization (the *Plan*) under chapter 11 of the Bankruptcy Code (the *Code*) proposes to pay creditors of County Investment LP (the *Debtor*) from proceeds of the sale of the Huffmeister property, which closed on December 29, 2023, and the auction of four tracts of undeveloped land owned by County Investment, 2017 Partners, LLC and Rella Development, LLC. The Auction is scheduled to take place on January 25, 2024. The Auction sales are scheduled to close on February 27, 2024. The four auction tracts being auctioned are: (a) 100 Northpoint; (b) 0 Northpoint; (c) Northborough; and (d) the Rella Tract (collectively, the "Auction Tracts"). The Auction Tracts are described more fully in Section I(A)(2).

This Plan provides for:

  • 1 class of priority claims;

• 3 classes of secured claims;

• 1 class of non-priority unsecured claims; and

• 2 class of equity holders

Non-priority unsecured creditors holding allowed claims will receive distributions, which the pro-ponent of this Plan has valued at approximately 100 cents on the dollar. This Plan also provides for the payment of administrative claims and priority tax claims, to the extent such claims are entitled to priority. Debtor's projections as to the feasibility of paying all administrative claims, priority tax claims, and allowed claims in Classes 1 through 6 are set forth in in **Exhibit B**.

All creditors and equity security holders should refer to Articles III through VII of this Plan for information regarding the precise treatment of their claim.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. If you do not have an attorney, you may wish to consult one.**

## III.
## Classification of Claims and Interests

This Plan provides for five classes of claims, described in the table below:

| | |
|---|---|
| **Class 1** | All allowed claims entitled to priority under 11 U.S.C. § 507(a) (except administrative expense claims under 11 U.S.C. § 507(a)(2) and priority tax claims under 11 U.S.C. § 507(a)(8). |
| | Debtors do not anticipate any allowed claims in this class. |
| **Class 2** | The claim of STLLC, to the extent allowed as a secured claim, under 11 U.S.C. § 506, with a first-lien mortgage on the Fondren Shopping Plaza, . |
| **Class 3** | The claim of Wells Fargo Bank, to the extent allowed as a secured claim under 11 U.S.C. § 506, with a first-lien mortgage on the property used by Pajooh as his principal residence—15015 Turkey Trail, Houston, TX 77079. |
| **Class 4** | The claim of Wells Fargo Bank, to the extent allowed as a secured claim under 11 U.S.C. § 506, with a first-lien mortgage on 7910 Tyneland Court. |
| **Class 5** | All non-priority unsecured claims allowed under 11 U.S.C. § 502. |
| **Class 6** | Interests of co-owners of the 100 Northpoint Tract, the 0 Northpoint Tract, and the 2017 Partners Tracts through the Auction |
| **Class 7** | Equity partnership/membership interests in the Debtors. |

**IV.**
**Treatment of Administrative Expense Claims, Priority Claims, and**
**Quarterly and Court Fees**

## A.   Unclassified claims

Under 11 U.S.C. § 1123(a)(1), administrative expense claims, and priority tax claims are not in classes.

## B.   Administrative expense claims

Subject to Court approval of a fee application(s), each holder of an administrative expense claim allowed under 11 U.S.C. § 503, will be paid in full on the Effective Date of this Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

Debtor anticipates there will be administrative expense claims made by: (1) Pendergraft & Simon, LLP, counsel for the Debtor-in-Possession, (2) Tom Howley, the Subchapter V Trustee, (3) Brendon Singh, the CRO.

On January 6, 2024, O'Connor Wechsler, PLLC filed an application for administrative expenses related to its attempts to enforce a settlement agreement, approved by the Bankruptcy Court by a final order—resolving litigation in the 2021 bankruptcy case (ECF no. 77). A hearing was held February 7, 2024 where the Movant requested an award of fees in excess of $30,000. The Court abated the motion "pending an order from Judge Lopez in case 21-32932." (ECF no. 122).

Ultimately, all claims for administrative expenses will require the submission of a fee application or other motion and approval of the said fee application or motion by the Bankruptcy Court before any claim can be paid.

The Debtor anticipates that administrative claims will be as follows:

| Claimant | Amount |
|---|---|
| Pendergraft & Simon | $95,000.00 |
| Tom Howley | 4,800.00 |
| Brendon Singh | 22,000.00 |
| O'Connor Wechsler, PLLC | tbd |
| Total | $121,800.00 |

In the event any administrative fee has not been approved by the Court by the Effective Date, the Debtor will hold such amount in reserve until approval.

## C.   Priority tax claims

The Debtor has the following allowed claims for property taxes:

| | Claim per Schedules | | Proof of Claim[6] | | | |
|---|---|---|---|---|---|---|
| Creditor | Amount | CUD | Amount | Date Filed | Objection | Position on Allowance |
| Aldine ISD | $10,966.41 | | $104,887.00 | 12/7/2023 | | $12,481.54 |
| City of Houston | | | 13,694.80 | 1/25/2024 | | 13,694.90 |
| Harris County | 0.02 | | 104,887.00 | 12/6/2023 | Objection | 0.02 |
| Harris County ESD #11 | | | 92.44 | 1/25/2024 | | 92.44 |
| Harris County ESD #13 | | | 281.38 | 1/25/2024 | | 231.38 |
| Harris County MUD #70 | | | 364.15 | 1/30/2024 | | 364.15 |
| Harris County MUD #191 | | | 7,061.39 | 12/22/2023 | | 7,061.39 |
| Houston Comm. Coll. System | | | 2,432.80 | 1/25/2024 | | 2,432.80 |
| Houston ISD | | | 22,903.37 | 1/25/2024 | | 22,903.37 |
| Lone Star College System | | | 2,419.82 | 1/25/2024 | | 2,419.82 |
| North Houston District | | | 2,016.46 | 1/26/2024 | | 2,016.46 |
| Spring Branch ISD | | | 15,056.22 | 1/30/2024 | | 15,056.22 |
| **Total** | | | | | | **$78,754.49** |

Allowed amounts are subject to change because: (1) the bar date for the filing of governmental claims is May 13, 2024, and (2) many of these claims will be paid at the closings of the sales of the 100 Northpoint Tract, the 0 Northpoint Tract, and the 2017 Partners Tracts, set to occur by February 27, 2024.

These allowed tax claims are secured claims under 11 U.S.C. § 506(b). These allowed tax claims are secured by a first-in-priority, statutory lien on all of the Debtor's assets pursuant to Tex. Tax Code § 32.01.

Notwithstanding anything to the contrary contained within the Confirmed Plan, property taxes due to any ad valorem taxing authority over real property of the estate, including, but not limited to, any ad valorem taxing authority in Harris County ("Local Texas Taxing Entities"), shall be paid by the Reorganized Debtor at the earlier of:

1. The closing of the sale of the real property serving as collateral for the said taxes following the scheduled auction of the said real property on January 25, 2024; or

2. The Effective Date of the Plan.

The property taxes for tax years 2022 and prior shall bear interest at the statutory rate of 12 percent per annum accruing from the Petition Date until said taxes are paid in full. The property taxes for tax years 2023 shall bear interest at the statutory rate of 12% per annum beginning February 1,

---

[6] Reflects claims filed as of February 16, 2024. These amounts are subject to change as the Claims Bar Date is September 5, 2023, and the deadline for claims by governmental units is October 31, 2023.

2024 until said taxes are paid in full. Any and all statutory tax liens securing prepetition and post-petition taxes shall be retained until such taxes are paid in full.

Any postpetition property taxes owed to the Local Texas Taxing Entities shall be paid in the ordinary course of business and prior to delinquency under Texas law, and the Local Texas Taxing Entities shall not be required to file an Administrative Expense Claim or request for allowance and payment of their claim. In the event any postpetition property taxes are not paid prior to delinquency under Texas law, penalties and interest shall accrue as provided under Texas law and the Local Texas Taxing Entities shall be authorized to commence any and all collection activities in state court without further order of this Court.

## D.  Statutory fees

All fees required to be paid under 28 U.S.C. § 1930 that are owed on or before the Effective Date of this Plan have been paid or will be paid on the Effective Date.

## E.  Prospective quarterly fees

Under Subchapter V, the quarterly fees described in 28 U.S.C. § 1930(a)(6) are not paid. Nonetheless, to the extent any quarterly fees required to be paid under 28 U.S.C. § 1930(a)(6) or (a)(7) does accrue, it will be timely paid until the case is closed, dismissed, or converted to another chapter of the Bankruptcy Code.

**V.**
**Treatment of Claims and Interests Under the Plan**

Claims and interests shall be treated as follows under this Plan:[7]

| Class | Impairment | Treatment |
|-------|------------|-----------|
| **Class 1 – Priority claims** excluding those in Section IV. | Unimpaired | The IRS holds a priority claim in the amount of $35,000.00. This amount is subject to change because the bar date for government claims is May 13, 2024. |
| | | To the extent a timely-filed priority claim is allowed, such claim will be paid in full, in one, or more, deferred cash payments starting upon the later of the Effective Date of this Plan, or the date on which such claim is allowed by a final non-appealable order. |
| | | Any allowed priority claims will be paid after any Court-approved administrative expense claims and priority tax claims are paid in full. |
| | | Creditors in this class will receive 100 percent of their allowed claims. |

---

[7] Other than those unclassified claims described in Section III, Debtor does not have any claims entitled to priority under 11 U.S.C. § 507. If such claim is filed before the applicable Claims Bar Date and allowed, the Debtor reserves the right to amend this Plan or to seek approval post-confirmation modification of the Plan.

| Class | Impairment | Treatment |
|---|---|---|
| **Class 2 – Secured claim** of Springhill Texas, LLC ("STLLC") | Unimpaired | This claim is documented by a promissory note dated February 14, 2019, executed by CILP, as maker, in favor of STLLC, as payee, in the original principal amount of $1,200,000.00.00 ("STLLC Note"). According to the proof of claim filed by STLLC (Claim No. 7), the principal plus interest balance of the STLLC Note was $1,181,283.52 on the Filing Date. The per diem from the Filing Date forward is $385.04. The STLLC Note is secured by a deed of trust covering property referred to herein as the "Fondren Plaza" and "Pagewood Tract." |
| | | On the Effective Date, the STLLC Note shall be paid in full and retired. All of STLLC's post-petition rights under 11 U.S.C. § 506(b), including, without limitation, post-petition interest, attorneys' fees and other charges under the loan documents, are preserved to the fullest extent allowed by law. All of STLLC's liens shall be retained until all indebtedness due to STLLC is paid in full. |
| **Class 3 – Secured claim** of Wells Fargo Bank | Unimpaired | Wells Fargo is the holder of an Adjustable-Rate Mortgage Note dated June 29, 2007, executed by CILP as maker, in favor of World Savings Bank, FSB, as payee, in the original principal amount of $499,200.00 ("WF Homestead Note"). The WF Homestead Note is secured by a deed of trust of even date, covering the Pajooh's principal residence located at 15015 Turkey Trail Court, Houston, Harris County, Texas 77079-6134. |
| | | On the Effective Date, the WF Homestead Note shall be paid in full and retired. Alternatively, if the proceeds of sale of the Auction Tracts are insufficient to retire and pay off the WF Homestead Note in whole or in part, the WF Homestead Note shall be reinstated, all past due amounts shall be paid on the Effective Date, and Pajooh shall continue to pay monthly installment of principal and interest in accordance with the terms of the WF Homestead Note, until it is paid in full on the maturity date. |
| | | All of Wells Fargo's post-petition rights under 11 U.S.C. § 506(b), including, without limitation, post-petition interest, attorneys' fees and other charges under the loan documents, are preserved to the fullest extent allowed by law. All of Wells Fargo's liens shall be retained until all indebtedness due to STLLC is paid in full. |

| Class | Impairment | Treatment |
|---|---|---|
| **Class 4 – Secured claim** of Wells Fargo Bank | Unimpaired | This claim is documented by a Prime Equity Line of Credit Agreement dated August 4, 2006 (the "LOC Agreement").  The balance due under the LOC Agreement was $139,227.17, as of the Filing Date. The indebtedness under the LOC Agreement is secured by a first lien deed of Trust covering the Debtor County Investment's ownership interest in a residence (non-homestead) located at 7910 Tyneland Court, Houston, Harris County, Texas. |
| | | On the Effective Date, the amount due under the LOC Agreement shall be paid in full and retired. Alternatively, if the proceeds of sale of the Auction Tracts are insufficient to retire and pay off the amount due under the LOC Agreement, in whole or in part, the amount due under the LOC Agreement shall be reinstated, all past due amounts shall be paid on the Effective Date, and County Investment shall continue to pay monthly installment of principal and interest in accordance with the terms of the LOC Agreement, until it is paid in full on the maturity date. |
| | | All of Wells Fargo's post-petition rights under 11 U.S.C. § 506(b), including, without limitation, post-petition interest, attorneys' fees and other charges under the loan documents, are preserved to the fullest extent allowed by law. All of Wells Fargo's liens shall be retained until all indebtedness due to STLLC is paid in full. |
| **Class 5 – Non-priority unsecured creditors** | Unimpaired | Class 5 – Class 5 consists of the Allowed Unsecured Claims of Creditors of the Debtors. The only Unsecured claim County Investment is aware of is the allowed unsecured claim of Muhammad Imran a/k/a Imran Balg in the amount of $250,000.00. |
| | | All allowed general unsecured claims will be paid, without interest, on the Effective Date. In the event claims in Class 5 cannot be paid in full at the Effective Date, Debtor will complete payments of allowed claims in Class 5 in deferred cash payments from the net revenues generated by the real property being retained by the Reorganized Debtor. |
| | | All of Wells Fargo's post-petition rights under 11 U.S.C. § 506(b), including, without limitation, post-petition interest, attorneys' fees and other charges under the loan documents, are preserved to the fullest extent allowed by law. All of Wells Fargo's liens shall be retained until all indebtedness due to STLLC is paid in full. |

| Class | Impairment | Treatment |
|---|---|---|
| **Class 6 – Interests of Co-Owners** | Unimpaired | This Class consists of (a) the undivided 50% fee simple interest of Apadana, Inc. with respect to the 100 Northpoint Tract; (b) the 25% interest of Alex Bastanjoo with respect to the 0 Northpoint Tract; (c) the 24% membership interest of the Estate of Madjid Tehrani, Deceased in 2017 Partners; (d) the 16.66% membership interest of Alex and Michelle Bastanjoo in 2017 Partners; and (e)  and the 12% membership interest of Skylight Development Group, LLC in Rella Development, LLC. |
| | | The terms and provisions of the Auction to be conducted by Tranzon, provide that the Debtors shall have the right to accept or reject an offer for sale derived from the Auction to be conducted by Tranzon on January 25, 2024. If a sale of one or one or more of the Auction Tracts closes, the sale proceeds net of closing costs shall be divided between each co-owner and County Investment as follows: |
| | | Each Co-owner shall be entitled to a pro rata portion of the Net Sales Proceeds less: (a) the co-owner's pro rata share of ad valorem taxes paid by County Investment during the co-owner's ownership tenure; (b) the co-owner's pro rata share of debt service payments by County Investment during the co-owner's ownership tenure; (c) the co-owner's pro rata share of other expenses paid by County Investment during the co-owner's ownership tenure, such as, *e.g.*, engineering costs and maintenance of the tract; and (d) a 10% management fee<u>Exhibit C</u> contains a summary of the proposed allocation of interests. |
| | | The Co-Owners have been served with the Expedited Motion to Approve Allocation and Payment of Sale Proceeds to Co-Owners (ECF no. 109) and the Order Setting Hearing (ECF no. 111), where the Court will hear evidence concerning any dispute with the proposed allocation in <u>Exhibit C</u>. It is anticipated that a final agreement may be presented to the Court at the time of the confirmation hearing. |
| **Class 7 – Equity security holders of the Debtor** | Impaired | The partnership interests of the partners will remain unchanged as a result of confirmation of this Plan, with U.S. Capital Investments LLC retaining its 1 percent general partnership interest and Danesh Pajooh retaining his 99 percent limited partnership interest. |
| | | The partners shall not receive any distribution from the Debtor until all allowed claims in Classes 1 through 5 are paid in full.[8] |

---

[8] Nothing in this Plan precludes the Debtor's Member from seeking approval of an Administrative Expense Claim, after a hearing with notice to all parties in interest.

## VI.
## Allowance and Disallowance of Claims

### A.   Disputed claim

A *disputed claim* is a claim that has not been allowed or disallowed by a final, non-appealable order, and as to which either:

1. a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or

2. no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

### B.   Objections to claims

Claims objections must be made by:

1. For a proof of claim filed prior to the Effective Date, not later than 30 days after the Effective Date; or

2. For a proof of claim filed after the Effective Date but before the Bar Date, not later than 30 days after the date the proof of claim is filed.

### C.   Delay of distributions on a disputed claim

No distribution will be made on account of a disputed claim unless such claim is allowed by a final, non-appealable order.

### D.   Anticipated claims objections

The Debtor does not anticipate the need to object to any claims on file as of the filing date of this Plan. Nonetheless, the Debtor reserves the right to object to any claims made, especially those claims made after the filing of this Plan.

### E.   Settlement of disputed claims

The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## VII.
## Provisions for Executory Contracts and Unexpired Leases

### A.   Assumed executory contracts and unexpired leases

County Investment will assume the following executory contracts and unexpired leases where it is Lessor of certain real property:

| Description | Lessee |
|---|---|
| 8914 Pagewood<br>Houston, TX 77063 | Dotson & Francis |
| 8914 Pagewood<br>Houston, TX 77063 | Kilmax Auto Sales |
| 3428 Fondren, Suite A<br>Houston, TX 77063 | The Drapery & Bedding Company<br>d/b/a Houston Drapery Center |
| 3428 Fondren, Suite B<br>Houston, TX 77063 | Last Call Ice Cream |
| 7910 Tyneland Ct.<br>Houston, TX 77070 | Latoya Evans |

**B.   Rejected executory contracts and unexpired leases**

The Plan constitutes a motion to reject all other executory contracts and unexpired leases to which the Debtor is a party. If the rejection by the Debtor pursuant to the Plan or otherwise of an executory contract or unexpired lease results in a Claim that is not theretofore evidenced by a timely proof of Claim or a proof of Claim that is deemed to be filed timely under applicable law, then such Claim will be forever barred and unenforceable against the Debtor's Bankruptcy Estate, unless a proof of Claim is filed with the clerk of the Court and served on counsel for the Debtor within thirty (30) days after entry the Confirmation Order.

**VIII.**
**Means for Implementation of the Plan**

**A.   Sale of Real Property**

Tranzon conducted an auction of the Auction Tracts on January 25, 2024, pursuant to the Order entered by the Court on December 13, 2025 (ECF no. 57). At a hearing on February 7, 2024, the Court entered an order approving the sales to the highest bidders. By the time of the hearing, no party in interest filed a written objection to the proposed sale, and , at the hearing, the Court asked those people in attendance, including Danesh Massood Pajooh, whether anyone had an objection to the sale (ECF 117, containing an audio recording of the hearing). The Motion was approved by the Court (ECF no. 114).[9] Closings on the sales of the Auction Properties, with the exception of the Rella Tract, is expected to occur on February 27, 2024.

---

[9] The Rella Property was not included in the final order and is retained by the Estate.

## B.   Execution of All Plan Documents

In order to effectuate a confirmed Plan, the CRO and/or Pajooh, on behalf of the Debtor, is authorized and directed to negotiate and execute, on the Effective Date, all Plan Documents called for in this Plan.

## C.   Plan Payments

### 1.   Payments by Debtor under a consensual Plan

Except for payments of those claims secured by perfected liens on real property, which will be paid by the applicable title company, and to the extent the Plan is confirmed as a consensual plan, all Plan payments of allowed claims shall be made by the CRO, and the CRO shall file periodic reports with the Court detailing the monies coming into the Estate and being paid out to creditors.

The CRO shall be entitled to compensation on a post-confirmation basis for acting as a disbursement agent. The CRO may submit periodic invoices to the Reorganized Debtor at least every 90 days, but nor more often than every 30 days. Invoices shall be paid within 15 days of presentment; however, if the Reorganized Debtor objects to any part of the invoice, the Reorganized Debtor shall pay the undisputed portion of the invoice and file an objection to the disputed part of the invoice with the Bankruptcy Court for a decision.

### 2.   Payments by the CRO under a non-consensual Plan

If the Plan is confirmed as a nonconsensual plan, the CRO shall make all payments to holders of allowed claims who are not otherwise paid by a title company at the closing of the sales of the real property of the estate.

The CRO shall be entitled to compensation on a post-confirmation basis for acting as a disbursement agent. The CRO may submit periodic invoices to the Reorganized Debtor at least every 90 days, but nor more often than every 30 days. Invoices shall be paid within 15 days of presentment; however, if the Reorganized Debtor objects to any part of the invoice, the Reorganized Debtor shall pay the undisputed portion of the invoice and file an objection to the disputed part of the invoice with the Bankruptcy Court for a decision.

## D.   Retained claims

Except as otherwise provided in the Plan, all causes of action that the Debtor and the Estate may hold against any person or entity shall be retained by the Bankruptcy Estate and shall be prosecuted, after the Effective Date, to the extent necessary to pay all administrative expense claims, priority tax claims, and allowed claims in Classes 1 through 5. Because the Debtor has reason to believe that there is sufficient equity in the Real Property to pay all such claims, no such claim may be filed until the earlier of: (a) the date of the closing of the last parcel of Real Property to be sold under the Plan, or (b) December 6, 2024. If this case is administratively closed or a final decree has been issued, the Subchapter V Trustee or any party in interest may have the case reopened to allow the prosecution of any Retained Claim.

### E.  Periodic Reporting

Prior to the Effective Date, the Debtor shall file with the Bankruptcy Court monthly reports in a form reasonably acceptable to the U.S. Trustee. On or after the Effective Date, the Reorganized Debtor shall file with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee until the earliest of this chapter 11 case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Court.

### F.  Remedies in the Event of a Default

In the event of a default in any payment of an allowed claim or interest out of projected disposable income, after notice and a hearing, the Court may order relief, including, but not limited to, the liquidation of property that vested with the Reorganized Debtor under the supervision of the Sub-chapter V Trustee of conversion of the case to Chapter 7.

## IX.
## Effect of Confirmation

Upon confirmation, the provisions of this Plan shall bind all Creditors and Interest Holders, whether or not they accept the Plan. On or after the Effective Date, all holders of Claims shall be precluded and enjoined from asserting any Claim (i) against the Debtor based on any transaction or other activity of any kind that occurred prior to the Confirmation Date except as permitted under the Plan and (ii) any derivative claims, including against third parties asserting alter ego claims, fraudulent transfer claims or any other type of successor liability.

Except as expressly provided in the Plan or Confirmation Order, all persons who have held, hold, or may hold Claims against the Debtor are permanently enjoined on or after the Effective Date from (i) commencing or continuing in any matter any action or other proceeding of any kind against the Debtor, or its property, with respect to any such Claim, (ii) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order with respect to any such Claim against the Debtor or its property, (iii) creating, perfecting, or enforcing any encumbrance of any kind against the Debtor or its property with respect to such claim, (iv) asserting any right of subrogation of any kind against any kind against any objection due to the Debtor or its property with respect to any such claim, and (v) asserting any right of setoff or recoupment against the Debtor kind against the Debtor. Unless otherwise provided in the Plan or by order of the Bankruptcy Court, all injunctions or automatic stays provided for in these cases pursuant to Section 106, if any, or Section 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date will remain in full force and effect until the Effective Date.

## X.
## Discharge

If the Debtor's Plan is confirmed under § 1191(a), on the Effective Date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified

in § 1141(d)(1)(A) of the Code. The Debtor will not be discharged from any debt imposed by this Plan.

If the Debtor's Plan is confirmed under § 1191(b), confirmation of the Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Code. The Debtor will not be discharged from any debt:

    a.   on which the last payment is due after the first 3 years of the plan, or as otherwise provided in § 1192; or

    b.   excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

## XI.
## Other Provisions

### A.  Injunctions related to Debtor

Except as otherwise expressly provided in the Plan, all entities who have held, hold or may hold Claims against, or Interest in, the Debtor's Bankruptcy Estate or the Debtor will be permanently enjoined, on and after the Consummation Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Debtor or the Debtor's Bankruptcy Estate, (c) creating, perfecting or enforcing any encumbrance of any kind against the Debtor or the Debtor's Bankruptcy Estate on account of any such Claim and (d) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtor or the Debtor's Bankruptcy Estate on account of any such Claim; provided, however, notwithstanding any provision of the Plan to the contrary, each holder of a Claim shall be entitled to enforce his, her or its rights under the Plan and Plan Documents.

Debtor—including any party acting in concert with Debtor (including, for the removal of doubt, any attorney acting or purporting to be acting for Debtor)—is hereby permanently enjoined from filing within the State of Texas any lawsuit, civil action, adversary proceeding, or administrative proceeding against any of the following individuals and entities: (a) Annie Catmull, (b) Kathleen O'Connor, (c) O'ConnorWechsler PLLC, (d) Harris County Texas Judge Kristin Hawkins, (e) W. Marc Schwartz, (f) Schwartz & Associates, (g) Robert Miller, (h) Royal West Investments Series E, (i) Shawn Shabazi, (j) Tom Howley (or any law firm affiliated with Tom Howley), the Subchapter V Trustee, (k) Brendan Singh (or any law firm affiliated with Brendan Singh), (*l*) the Office of the U.S. Trustee, (m) any employees of the Office of the U.S. Trustee, (n) any federal judge, (o) state judge, (p) any bankruptcy judge, (q) any employee of any judge, (r) the District Clerk's office for the Southern District of Texas, (s) any employee of the District Clerk's Office for the Southern District of Texas, (t) Leonard Simon (or any law firm affiliated with Lenoard Simon), and (t) William Haddock (or any law firm affiliated with William Haddock) (collectively, the "*Protected Parties*") without first coming to the Bankruptcy Judge presiding over these bankruptcy cases jointly administered under case no. 23-34374 and obtaining prior written permission from

the Bankruptcy Judge after a demonstration to the Bankruptcy Judge that the claim is neither friv-olous, harassing, vexatious, nor being pursued for a bad faith purpose.

## B.   Injunctions related to Debtor's partners

The partners comprising the interest holders in Class 7 are prohibited from making any changes to the management of the Debtor until all provisions of the Confirmed Plan have been satisfied, ex-cept in the event of the death, legal disability, or voluntary resignation of any person acting on behalf of the General Partner. In such case, any successor shall be chosen in accordance with the partnership agreement and approved by the Bankruptcy Court.

If a *tax distribution* is made to a partner(s) for the purpose of paying the Debtor's federal income taxes, the Debtor shall file a notice of such proposed distribution, including the amount of such proposed distribution and a copy of the applicable IRS Form K-1(s) with the Court and serve a copy on those creditors entitled to notice under Bankruptcy Rule 9013 and applicable Bankruptcy Local Rules. If no objection is made within 14 days, such distribution shall be allowed without further Order of the Court.

Masood Danesh Pajooh, the manager of U.S. Investments, LLC, which is the general partner of County Investment , LP, and the sole manager of 2017 Partners, LLC shall not interfere with the management of the Debtors by the Chief Restructuring Officer, Brendon Singh, or any successor to Brendon Singh, pending (a) confirmation of this Plan, (b) the distribution of the proceeds of sale of the Auction Property to pay Administrative Claims the Secured and Unsecured Claims of Cred-itors classified under this Plan, and (c) discharge of the Chief Restructuring Officer and closing of the bankruptcy cases by order of the Court.

Masood Danesh Pajooh, acting either *pro se* or through counsel, in his individual capacity, or as Manager of Debtor's General Partner, U.S. Capital Investments, LLC and any party acting in con-cert with Masood Danesh Pajooh is hereby permanently enjoined from filing within the State of Texas any lawsuit, civil action, adversary proceeding, or administrative proceeding against any of the Protected Parties without first coming to the Bankruptcy Judge presiding over these bankruptcy cases jointly administered under case no. 23-34374 and obtaining ***prior written permission from the Bankruptcy Judge*** after a demonstration to the Bankruptcy Judge that the claim is neither frivolous, harassing, vexation, nor being pursued for a bad faith purpose

## C.   Exculpation and Limitation of Liability

Neither the Debtor, the Debtor's Partners, the Chief Restructuring Officer, the Subchapter V Trus-tee, the United States Trustee, or any person or entity released as part of a settlement agreement approved by final order entered by any Judge of the United States Bankruptcy Court for the South-ern District of Texas, or any attorneys representing any such parties, will have or incur any liability to any holder of a Claim or an Interest, or any other party in interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, or affiliates, or any of their suc-cessors or assigns, for any act or omission in connection with, relating to, or arising out of, the solicitation of votes to accept the Plan, any actions taken in the Debtor's Bankruptcy Case, or the pursuit of confirmation of the Plan, from the Petition Date to the Effective Date, except for their willful misconduct, gross negligence, actual fraud, or as provided by the Plan or the Plan

Documents, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

No holder of a Claim or Interest, no other party in interest, none of their respective agents, employees, representatives, financial advisors, attorneys, or affiliates, and no successors or assigns of the foregoing, will have any right of action against the Debtor, the Debtor's Partners, the Chief Restructuring Officer, the Subchapter V Trustee, the United States Trustee, or any person or entity released as part of a settlement agreement approved by final order entered by any Judge of the United States Bankruptcy Court for the Southern District of Texas or its Partners, or any attorneys for any of the foregoing parties, for any act or omission in connection with, relating to, or arising out of the solicitation of votes to accept the Plan, or the pursuit of confirmation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, from the Petition Date to the Effective Date, except for their willful misconduct, gross negligence, actual fraud, or as provided by the Plan or the Plan Documents.

## D.  Vesting of Assets

To the extent not otherwise inconsistent with any other provision of this Plan, all property of the Estate shall vest with the Reorganized Debtor on the Effective Date of this Plan. However, if the Reorganized Debtor defaults in performing under the provisions of the Plan and the chapter 11 case is converted to Chapter 7, all property vested in the Reorganized Debtor, all subsequently acquired property owned as of or after the conversion date, and all Retained Claims shall revest and constitute property of the Estate in the chapter 7 case.

## E.  Employment of professionals after the Effective Date

Subject to the approval of the Court under the standards set forth in 11 U.S.C. § 327, the reorganized Debtor may employ professionals to assist it in effectuating the Confirmed Plan.

## F.  Final Decree

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Plan Proponent, or such other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case. Alternatively, the Court may enter such a final decree on its own motion.

## G.  Reservations of right to amend Plan

The Debtor reserves the right to amend this Plan at any time prior to Confirmation in accordance with 11 U.S.C. § 1193(a). The Debtor reserves all rights to modify this Plan after Confirmation in accordance with 11 U.S.C. §§ 1193(b) and 1193(c).

## H.  Alternative plans of reorganization

The proposed Plan affords the holders of Claims the maximum potential for realization of the Debtor's assets and is in the best interest of the holders. If the Plan is not confirmed, theoretical alternatives include (i) continuation of the Chapter 11 case; (ii) alternative plans of reorganization; (iii) liquidation of the Debtor under Chapter 7; and (iv) dismissal of the Chapter 11 case.

If the Plan is not confirmed, other parties in interest could attempt to propose a different plan or plans. However, such plans, might involve other forms of reorganization or liquidation of the Debtor's operations and assets. Any other alternative plans, however, would likely result in additional administrative expenses to the Estate and would provide little to no benefit.

## I.  Definitions and rules of construction

The definitions and rules of construction set forth in 11 U.S.C. §§ 101 and 102 shall apply when terms defined or construed in the Code are used in this Plan and they are supplemented by the following definitions.

"*Administrative Claim*" or "*Administrative Priority Claim*" means a Claim that is entitled to priority under 11 U.S.C. §§ 326, 327, 330, 503(b)(1)–503(b)(9), 506(c), or 1103 asserted in this case, which Claims are described in Section III of this Disclosure Statement and treated in Section III of this Disclosure Statement and Plan.

"*Administrative Claim Bar Date*" means the date set by the Court by which administrative claims entitled to priority under 11 U.S.C. §§ 326, 327, 330, 503(b), 506(c), or 1103 asserted in this case, including substantial contribution claims, must be filed. Debtor will request that the Court set the Administrative Claim Bar Date by separate order of the Court.

"*Allowed Claim*" means a Claim or any portion thereof:

1.  that has been allowed by a Final Order,

2.  that either has been Scheduled as a liquidated, non-contingent, undisputed Claim in an amount greater than zero in the Debtor's Schedules, as the same may from time to time be amended in accordance with the Bankruptcy Code, Bankruptcy Rules or order of the Bankruptcy Court, or is the subject of a timely filed proof of Claim as to which either no objection to its allowance has been filed (either by way of objection or amendment to the Schedules) within the periods of limitation fixed by the Bankruptcy Code or by any order of the Bankruptcy Court, or any objection to its allowance has been settled, waived through payment, or withdrawn, or has been denied by a Final Order, or

3.  that is expressly allowed in a liquidated amount in the Plan; provided, however that with respect to an administrative claim.

"*Allowed Claim*" further means an administrative claim as to which a timely request for payment has been made in accordance with this Plan—if such written request is required—or other administrative claim, in each case as to which:

1.  a timely objection has not been filed, or

2.  a timely objection is filed and such objection has been settled, waived through payment, or withdrawn, or has been denied by a Final Order.

"*Claim*" means a claim against any of the Debtor's Bankruptcy Estate, whether or not asserted, as defined in 11 U.S.C. § 101(5).

"*Claims Bar Date*" means the deadline for creditors to file proofs of claims. In this case, the *Claims Bar Date* for most creditors is January 15, 2024. The *Claims Bar Date* for governmental units is May 13, 2024.

"*Confirmation*" means entry by the Bankruptcy Court of the Confirmation Order confirming this Plan.

"*Confirmation Date*" means the date of entry by the Bankruptcy Court of the Confirmation Order.

"*Confirmation Order*" means the order entered by the Bankruptcy Court confirming the Plan.

"*Disposable Income*" means the income that is received by the Debtor and that is not reasonably necessary to be expended for the payment of expenditures necessary for the continuation, preservation, or operation of the business of the Debtor.

"*Effective Date*" means the date when the Confirmation Order becomes a Final Order.

"*Fair and Equitable with Respect to Each Class*" of claims or interests includes the following requirements:

(1)   With respect to a class of secured claims, the Plan meets the requirements of Section 1129(b)(2)(A)

(2)   As of the Effective Date of the Plan –

   (a)   The Plan provides that all of the projected Disposable Income of the Reorganized Debtor to be received in the 3-year period, or such longer period not to exceed 5 years as the Court may fix, beginning on the date that the first payment is due under the Plan will be applied to make payments under the Plan; or

   (b)   The value of the property to be distributed under the Plan in the 3-year period, or such longer period not to exceed 5 years as the Court may fix, beginning on the date on which the first distribution is due under the Plan is not less than the Projected Disposable Income of the Debtor.

(3)   (a)   (i) The Debtor will be able to make all payments under the Plan, or (ii) there is a reasonable likelihood that the Debtor will be able to make all payments under the Plan; and

   (b)   The Plan provides appropriate remedies, which may include the liquidation of nonexempt assets, to protect the holders of claims or interests in the event that the payments are not made.

"***Final Order***" means an order or judgment of the Bankruptcy Court, as entered on the docket in the Debtor's Bankruptcy Case, the operation or effect of which has not been stayed, reversed, or amended and as to which order or judgment (or any revision, modification, or amendment thereof) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending.

"***Impaired***" means, when used with reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired within the meaning of 11 U.S.C. § 1124.

"***Priority Claim***" means a Claim asserted under 11 U.S.C. §§ 507(a)(3)–507(a)(10) against the Debtor's Bankruptcy Estate.

"***Secured Claim"*** means a Claim, other than a setoff claim, that is secured by an encumbrance, or the proceeds of the sale of such property, in which the Debtor has an interest, to the extent of the value, as of the effective date or such later date as is established by the Bankruptcy Court, of such interest or encumbrance as determined by a Final Order of the Bankruptcy Court pursuant to 11 U.S.C. § 506 or as otherwise agreed upon in writing by Debtor and the holder of such Claim.

"***Subchapter V Trustee***" means the Trustee appointed pursuant to 11 U.S.C. § 1183. In this case, the United States Trustee appointed Tom Howley to serve as Subchapter V Trustee.

"***Unimpaired Claim***" means a claim that is not an impaired claim.

"***Unsecured Claim***" shall mean a claim that is not entitled to priority under 11 U.S.C. §§ 507(a)(1)–507(a)(9), and includes deficiency claims of any of the secured creditors.

## J.   Effective Date

The effective date of this Plan is the first business day following the date that is 15 days after the entry of the confirmation order. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay expires or is otherwise terminated.

## K.   Severability

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

## L.   Binding effect

The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

## M.   Headings

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

## N.  Controlling effect

Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Texas govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

## O.  Retention of jurisdiction

Under 11 U.S.C. §§ 105(a) and 1142, the Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Case and the Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

    a.   Allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim or Priority Claim or the resolution of any objections to the allowance or priority of Claims or Interest;

    b.   Hear and determine all applications for compensation and reimbursement of expenses of Administrative Claims;

    c.   Hear and determine all matters with respect to the assumption or rejection of any executory contract or unexpired lease to which the Debtor is a party or with respect to which the Debtor may be liable, including, if necessary, the liquidation or allowance of any Claims arising therefrom;

    d.   Effectuate performance of and payments under the provisions of the Plan;

    e.   Enter such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan, and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

    f.   Hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Plan, including disputes arising under agreements, documents or instruments executed in connection with the Plan;

    g.   Consider any modifications of the Plan, cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

    h.   Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with implementation, consummation, or enforcement of the Plan or the Confirmation Order;

i.  Enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

j.  Hear and determine any matters arising in connection with or relating to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

k.  Enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Debtor's Bankruptcy Case;

l.  Hear and determine matters concerning state, local, and federal taxes in accordance with 11 U.S.C. §§ 346, 505, and 1146;

m.  Hear and determine all matters related to the property of the Debtor's Bankruptcy Estate from and after the Consummation Date;

n.  Hear and determine such other matters as may be provided in the Confirmation Order and as may be authorized under the provisions of the Bankruptcy Code; and

o.  Enter a final decree closing the Debtor's Bankruptcy Case.

DATED: February 16, 2024.

COUNTY INVESTMENT L.P.

/s/ *Brendon Singh*
Brendon Singh
2502 LaBranch Street
Houston, TX 77004
Tel. 832-975-7300

*Chief Restructuring Officer*

PENDERGRAFT & SIMON, LLP

/s/ *Leonard H. Simon*
Leonard H. Simon
   Texas Bar No. 18387400
   S.D. Tex. Adm. No. 8200
William P. Haddock
   Texas Bar No. 00793875
   S.D. Tex. Adm. No. 19637
2777 Allen Parkway, Suite 800
Houston, TX 77019

Tel. (713) 528-8555
Fax. (713) 868-1267

*Counsel for Plan Proponent*

Exhibit A
# County Investment LP
## case no. 23-34374
## Chapter 7 Liquidation Analysis
Based upon Debtor's Schedules with adjustments for Post-Petition Changes

Note

**ESTIMATED AMOUNTS RELIAZABLE FROM LIQUIDATION OF ASSETS**

| | | |
|---|---:|---:|
| Cash on hand at 10/31/2021 | | $ 96,121.97 |
| | | |
| Interests in Business Entities | | - |
| 2017 Partners, LLC (59.34%) | $ 872,048.18 | |
| Rella Development, LLC (65%) | 175,857.50 | 1,047,905.68 |
| | | |
| Vehicles | | |
| 2008 Nissan Pathfinder | $ 2,000.00 | |
| 2016 Lexus LX570 | 46,725.00 | 48,725.00 |
| | | |
| Real Property | | |
| 3428 Fondren, Houston, TX 77063 | $ 1,962,725.00 | |
| 8914 Pagewood, Houston, TX 77063 | 675,000.00 | |
| 0 Northpoint, Houston, TX 77060 | 601,128.00 | |
| 100 Northpoint, Housot, TX 77079 | 603,305.00 | |
| 7910 Tyneland, Houston, TX 77070 | 306,340.00 | |
| 675 W. Rankin Rd., Houston, TX 77067 | 54,439.00 | 4,202,937.00 |
| | | |
| TOTAL NON-EXEMPT ASSETS | | $ 5,395,689.65 |

**RECOVERY OF FRAUDULENT TRANSFER, PREFERENCE, AND OTHER AVOIDANCE ACTIONS**

| | | |
|---|---:|---:|
| Recovery of potential preference claims | | $ - |
| | | |
| **ESTIMATED AMOUNT AVAILABLE FOR PAYMENT OF ALLOWED CLAIMS** | | $ 5,395,689.65 |

**less: PAYMENT OF SECURED AND PRIORITY CLAIMS**

| | | |
|---|---:|---:|
| Secured Claims | | |
| Aldine ISD | $ 12,481.54 | |
| City of Houston | 1,764.23 | |

| | | |
|---|---:|---:|
| Harris County | 0.02 | |
| Harris County MUD 191 | 7,061.39 | |
| Spring Branch ISD | 3,132.00 | |
| Stronghill Texas | 1,200,000.00 | $ 1,224,439.18 |

**Estimated Administrative Claims**

| | | |
|---|---:|---:|
| Ch. 7 Trustee's fee allowed under 11 U.S.C. § 326 | $ 185,120.69 | |
| Estimated compensation to Ch. 7 Trustee's counsel | - | |
| Estimated fees to Trustee's accountants | 7,500.00 | |
| Allowance for fees of Subchapter V Trustee and Chapter 11 Debtor-in-Possession Counsel for professional services rendered prior to conversion to Ch. 7 | 50,000.00 | 242,620.69 |

**Priority Unsecured Claims**

| | |
|---|---:|
| Internal Revenue Service (§ 507(a)(8)) | 35,000.00 |

| | |
|---|---:|
| **TOTAL SECURED AND PRIORITY CLAIMS** | $ 1,502,059.87 |

| | |
|---|---:|
| **AMOUNT AVAILABLE TO GENERAL, UNSECURED CREDITORS** | $ 3,893,629.78 |

**Estimated General, Unsecured Claims**

| | |
|---|---:|
| Allowed Claims per Schedules and Claims Register | $ 225,000.00 |
| Allowance for undersecured amounts – | |
| none | - |
| Section 550(h) Claims from Avoidance Actions | - |

| | |
|---|---:|
| **Total Estimated General, Unsecured Calims** | $ 225,000.00 |

| | |
|---|---:|
| **Estimated Percentage Payment to General, Unsecured Creditors** | 100.0% |

**Notes**

Exhibit B
## Estimated Post-Confirmation Monthly Income

| | | | |
|---|---|---|---|
| Projedted Monthly Rental Revenue | | $ | 12,500.00 |
| | | | |
| Operating Expenses | | | |
| Electricity | $ | 475.00 | |
| Water | | 500.00 | |
| Lawn Service | | 650.00 | |
| Trash Removaal | | 200.00 | |
| Miscellaneous | | 600.00 | 2,425.00 |
| | | | |
| Management Fee | | | 2,000.00 |
| | | | |
| Net Monthly Income Before Taxes | | $ | 8,075.00 |
| | | | |
| Reserve for Property Taxes | | | 4,833.33 |
| | | | |
| Net Income | | $ | 3,241.67 |

Exhibit C
**Payment of Allowed Claims & Interests at Effective Date**

| | | |
|---|---|---|
| Cash in DIP Account (2/15/2024) | | $ 368,953.37 |
| | | |
| Projected Proceeds from Property Sales (2/27/2024) | | |
| 0 Northpoint | | |
| Sales price | $ 445,000.00 | |
| Closing costs | 8,580.57 | 436,419.43 |
| 100 Northpoint | | |
| Sales price | $ 500,000.00 | |
| Closing costs | 9,710.29 | 490,289.71 |
| 2017 Partners Tracts | | |
| Sales price | $ 1,505,000.00 | |
| Closing costs | 24,785.29 | 1,480,214.71 |
| | | |
| Total Cash at Effective Date (3/6/2024) | | $ 2,775,877.22 |
| | | |
| Reserve for Administrative Expenses | | |
| Pendergraft & Simon | $ 91,000.00 | |
| Tom Howley | 4,800.00 | |
| Brendon Singh | 22,000.00 | |
| O'Connor Wechsler, PLLC | 45,000.00 | 162,800.00 |
| | | |
| Reserve for Property Taxes | | 10,000.00 |
| | | |
| Class 1 Priority Claims | | 35,000.00 |
| | | |
| Class 2 Secured Claim of Stronghill Texas | | 1,227,873.36 |
| | | |
| Class 5 General Unsecured Claim | | 250,000.00 |
| | | |
| Class 6 Interests of Co-Owners | | |
| Apadana, Inc. / Estate of Medjed Tehrani, Deceased | | |
| 100 Northpoint | $ 26,069.81 | |
| 2017 Partners | 148,710.68 | 174,780.49 |
| Alex Bastanjoo | | |
| 0 Northpoint | $ 167,798.17 | |
| 2017 Partners | 221,943.39 | 389,741.56 |
| | | |
| Net Before Payment of Classes 3 & 4 | | $ 525,681.81 |
| | | |
| Current Debt on Turkey Trail | $ 499,200.00 | |
| Current Debt on Tynelnad | 139,228.00 | 638,428.00 |
| | | |
| Net to Be Paid from Disposable Income | | $ (112,746.19) |

Exhibit C    Page 1 of 1

Payments at Effective Date

**100 Northpoint Property**

|  | Amounts | - - - Allocated to Partners - - - | |
|---|---|---|---|
|  |  | CILP<br>50% | Apadana, Inc.<br>50% |
| **Closing** |  |  |  |
| Contract Price | $ 500,000.00 | $ 250,000.00 | $ 250,000.00 |
| Est. closing costs | 7,500.00 | 3,750.00 | 3,750.00 |
| Property Taxes Due at Closing | >Taxes are being paid 1/31/2024 | | |
| Harris County | - | - | - |
| Aldine ISD | - | - | - |
| Subtotal | $ - | $ - | $ - |
| Prorated 2024 Property Taxes to Buyer |  |  |  |
| Harris County | 1,168.28 | 584.14 | 584.14 |
| Aldine ISD | 1,042.01 | 521.00 | 521.00 |
| Subtotal | $ 2,210.29 | $ 1,105.15 | $ 1,105.15 |
| Net Sales Proceeds Before Adjustments | $ 490,289.71 | $ 245,144.86 | $ 245,144.86 |
| **Adjustments** |  |  |  |
| Ownership Costs (8/6/16–pet. date) |  |  |  |
| Property Taxes paid by CILP |  |  |  |
| Harris County | 48,811.17 | (24,405.58) | 24,405.58 |
| Aldine ISD | 65,811.75 | (32,905.87) | 32,905.87 |
| Subtotal | $ 114,622.92 | $ (57,311.46) | $ 57,311.46 |
| Property Taxes paid by Apadana | 17,561.68 | 8,780.84 | (8,780.84) |
| Loan Payments by CILP | 144,211.29 | (72,105.65) | 72,105.65 |
| Loan Payoff on 12/29/2023 | 176,571.70 | (88,285.85) | 88,285.85 |
| Total Ownership Costs | $ 435,405.91 | $ (217,702.95) | $ 217,702.95 |
| Net After Adjustments |  | $ 462,847.81 | $ 27,441.90 |
| Management Fee (10%) |  | $ (1,372.10) | $ 1,372.10 |
| Net to Partners |  | $ 464,219.90 | $ 26,069.81 |

**0 Northpoint**

| | Amounts | - - - Allocated to Partners - - - | |
| | | CILP | Bastanjoo |
| | | 50% | 50% |

**Closing**

| | | | | | | |
|---|---|---|---|---|---|---|
| Contract Price | $ | 445,000.00 | $ | 222,500.00 | $ | 222,500.00 |
| Est. closing costs | | 6,675.00 | | 3,337.50 | | 3,337.50 |

Property Taxes Due at Closing    *>Taxes are being paid 1/31/2024*

| | | | | | | |
|---|---|---|---|---|---|---|
| Harris County | | - | | - | | - |
| Aldine ISD | | - | | - | | - |
| Subtotal | $ | - | $ | - | $ | - |

Prorated 2024 Property Taxes to Buyer

| | | | | | | |
|---|---|---|---|---|---|---|
| Harris County | | 732.74 | | 366.37 | | 366.37 |
| Aldine ISD | | 1,172.83 | | 586.42 | | 586.42 |
| Subtotal | $ | 1,905.57 | $ | 952.79 | $ | 952.79 |
| Net Sales Proceeds Before Adjustments | $ | 436,419.43 | $ | 218,209.72 | $ | 218,209.72 |

**Adjustments**

Ownership Costs (6/1/2028–pet. date)

Property Taxes paid by CILP

| | | | | | | |
|---|---|---|---|---|---|---|
| Harris County | | 31,122.19 | | (15,561.10) | | 15,561.10 |
| Aldine ISD | | 32,412.42 | | (16,206.21) | | 16,206.21 |
| Subtotal | $ | 63,534.61 | $ | (31,767.31) | $ | 31,767.31 |
| Property Taxes paid by Bastanjoo | | - | | - | | - |
| Loan Payments by CILP | | - | | - | | - |
| Loan Payoff | | - | | - | | - |
| Total Ownership Costs | $ | 63,534.61 | $ | (31,767.31) | $ | 31,767.31 |
| Net After Adjustments | | | $ | 249,977.02 | $ | 186,442.41 |
| Management Fee (10%) | | | $ | (18,644.24) | $ | 18,644.24 |
| Net to Partners | | | $ | 268,621.26 | $ | 167,798.17 |

| 2017 Partners | Amounts | - - - Allocated to Partners - - - | | |
|---|---|---|---|---|
| | | CILP | Tehrani Estate | Bastanjoo |
| | | 59.34% | 24.00% | 16.66% |
| **Closing** | | | | |
| Contract Price | $ 1,505,000.00 | $ 893,067.00 | $ 361,200.00 | $ 250,733.00 |
| Est. closing costs (1½%) | 22,575.00 | 13,396.01 | 5,418.00 | 3,761.00 |
| Property Taxes Due at Closing | >Taxes are being paid 1/31/2024 | | | |
| Harris County | - | - | - | - |
| Spring ISD | - | - | - | - |
| Subtotal | $        - | $        - | $        - | $        - |
| Prorated 2024 Property Taxes to Buyer | | | | |
| Harris County | 1,168.28 | 693.26 | 280.39 | 194.64 |
| Spring ISD | 1,042.01 | 618.33 | 250.08 | 173.60 |
| Subtotal | $ 2,210.29 | $ 1,311.59 | $ 530.47 | $ 368.23 |
| Net Sales Proceeds Before Adjustments | $ 1,480,214.71 | $ 878,359.41 | $ 355,251.53 | $ 246,603.77 |
| **Adjustments** | | | | |
| Ownership Costs (8/23/19–pet. date) | | | | |
| Property Taxes paid by CILP | | | | |
| Harris County | 126,879.86 | (30,451.17) | 30,451.17 | |
| Spring ISD | 86,468.76 | (20,752.50) | 20,752.50 | |
| Subtotal | $ 213,348.62 | $ (51,203.67) | $ 51,203.67 | |
| Property Taxes paid by Apadana/Tehran | 12,638.74 | 9,605.44 | (9,605.44) | |
| Loan Payments prior to 10/2/2023 | 330,531.80 | (79,327.63) | 79,327.63 | |
| Loan Payoff on 12/29/2023 | 324,117.14 | (77,788.11) | 77,788.11 | |
| Total Ownership Costs | $ 880,636.30 | $ (198,713.97) | $ 198,713.97 | $        - |
| Net After Adjustments | | $ 1,077,073.38 | $ 156,537.56 | $ 246,603.77 |
| Management Fee (10%) | | $ (32,487.25) | $ 7,826.88 | $ 24,660.38 |
| Net to Partners | | $ 1,109,560.64 | $ 148,710.68 | $ 221,943.39 |